IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**KATHY D. MOORHEAD**                                                **Plaintiff**

**v.**                                                       **Civil Action No. 1:06CV42-M-B**

**MICHAEL J. ASTRUE,**
**Commissioner of**
**Social Security**                                                    **Defendant**

**MEMORANDUM OPINION**

Plaintiff, Kathy D. Moorehead, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of an unfavorable final decision of the Commissioner of the Social Security Administration (the "Commissioner"), regarding her application for disability benefits under Title II. The Court, having duly considered the submissions of the parties, the administrative record and the applicable law, rules as follows.

**Procedural History**

Plaintiff filed an application for disability benefits under Title II on October 18, 2002, alleging disability since August 27, 2002. (Tr. 58-60). The application was denied initially and on reconsideration. (Tr. 27-38).

In a hearing decision dated May 21, 2005, an administrative law judge ("ALJ") found that Plaintiff was not disabled as defined in the Act from August 27, 2002, through February 4, 2005, but was disabled thereafter. (Tr. 18-23). Plaintiff filed a request for review of that decision, which the Appeals Council denied on January 13, 2006. (Tr. 5-7). The ALJ's hearing decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**Facts**

Plaintiff was born May 26, 1950, (Tr. 58) and was almost 55 years of age at the time of

the hearing decision on May 21, 2005. (Tr. 23). Plaintiff completed a GED. (Tr. 79). Plaintiff had previous work experience as a beautician in a nursing home and as an activity director in a nursing home. (Tr. 87). Plaintiff alleged that she could not work due to right leg burning, shocking, numbness and spasms. (Tr. 73). After review and evaluation of the medical evidence of record, the subjective testimony at the hearing from Plaintiff (Tr. 288-320), and the testimony of a vocational expert (Tr. 320-23), the ALJ found Plaintiff not disabled for the period of August 27, 2002, through February 4, 2005 (Tr. 18-23). Contrary to Plaintiff's allegation of disability, for that period of time, the ALJ found that she had the residual functional capacity ("RFC") to perform a range of light work that did not require lifting or carrying more than ten pounds frequently and twenty pounds occasionally. (Tr. 22). Additionally, he found that Plaintiff could not climb ramps or stairs, or stoop, kneel, or crouch for more than two and one-half hours per day. (Tr. 22). He also found that she should never climb ladders, ropes, or scaffolds. (Tr. 22). Based upon this RFC and vocational expert testimony, the ALJ found that Plaintiff could perform her past work as a beautician and nursing home activity director. (Tr. 22-23). Given these findings, the ALJ concluded that Plaintiff was not disabled for the period of August 27, 2002, through February 4, 2005. (Tr. 22-23). The ALJ did find, however, that Plaintiff was disabled from February 5, 2005 through the time of his decision. (Tr. 22-23).

## Law

The function of this Court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Villa v. Sullivan*, 895 F.2d 1019,

1021 (5th Cir. 1990). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Spellman*, 1 F.3d at 360. This Court may not reweigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. *Id.*; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). Despite this Court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Villa*, 895 F.2d at 1022; *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled, Plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 (1995).

The Court "weigh[s] four elements of proof when determining whether there is

substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## Analysis

In her Brief, Plaintiff presents several points of error and makes numerous contentions which are quite scattered. Nonetheless, the Court will first address the point of error to which Plaintiff gives most attention, whether the Commissioner erred in failing to give controlling weight to the opinion of Plaintiff's treating physician, and then address some remaining issues raised by Plaintiff.

Plaintiff claims she became disabled on August 27, 2002, due to back and leg injuries, hearing loss and depression. (Pl's B. 2). Her medical records indicate she had an accident in her home on February 5, 2005, whereby she "blacked out," and an iron fell on her right leg and remained there for an undetermined period of time. (Tr. 229, 234). She suffered a fourth degree burn and was admitted to Delta Regional Medical Center the same day. (Tr. 229). Upon examination, the peroneal nerve was out, and the tibia and fibula were exposed. (Tr. 229). Based on the recommendation of the attending physician, Plaintiff elected to have an above the knee amputation of her right leg. (Tr. 229). Plaintiff underwent a right above the knee amputation on February 17, 2005. (Tr. 229).

The Commissioner found that from February 5, 2005, when Plaintiff suffered the injury which led to her amputation, her impairments met the requirements of Listing 1.05B; and she was disabled. Based on this, the Court will deal only with the Commissioner's finding of not

4

disabled for the period from August 27, 2002 until February 4, 2005.

*Plaintiff's Treating Physician*

Plaintiff argues that the opinion of her treating physician, Rahul Vohra, M.D., should have been afforded controlling weight. (Pl.'s B. 7, 9-10, 12). In a letter dated December 12, 2002, Dr. Vohra stated that Plaintiff had been a patient of his since August 2001 and that she had a long history of low back pain and right lower extremity radiating pain. (Tr. 180). He stated that an MRI of the lumbar spine revealed lumbar spondylosis at L4-5 and L5-S1. (Tr. 180). Dr. Vohra indicated that Plaintiff had undergone a significant amount of conservative treatment, including epidurals and physical therapy, with minimal relief. (Tr. 180). He stated that Plaintiff was on narcotics for pain control, including Lorcet and Duragesic, but had continued significant low back and right lower extremity radiating pain. (Tr. 180). Based upon these findings, he stated it was his opinion that Plaintiff "is not able to be gainfully employed." (Tr. 180). On January 5, 2005, Dr. Vohra submitted a letter nearly identical to the one dated December 12, 2002, again concluding that Plaintiff "is not able to tolerate any gainful employment due to her condition." (Tr. 224, 270).

The Court has reviewed the ALJ's decision and the record and finds the ALJ's determination that Plaintiff's treating physician's opinion did not warrant controlling weight is supported by substantial evidence.

On July 14, 2000, Plaintiff underwent a radiological study showing early degenerative disc changes at L4-5 and a more advanced disc change at L5-S1 with a small broad-based protrusion abutting the thecal sac and the origin of the S1 nerve roots bilaterally. (Tr. 212).

Plaintiff had a computer tomography of the lumbar spine on February 28, 2001, which

showed minimal spondylosis at L4-5 and L5-S1 without significant canal or neural foraminal stenosis. (Tr. 210).

Plaintiff presented to Dr. Vohra on July 25, 2002, and complained of fairly severe leg pain going to the top of her foot. (Tr. 194). Physical examination showed moderate lower lumbar paraspinal spasm, but no significant sacroiliac tenderness. (Tr. 194). Strength was normal except with one minor exception. (Tr. 194).

Jeffrey T. Summers, M.D., treated Plaintiff on July 31, 2002, and noted a two year history of back pain aggravated by standing and walking and diminished by sitting. (Tr. 188). Previous epidural pain injections had been without any noticeable benefit. (Tr. 188). On examination, Plaintiff could heel and toe walk, but with a slightly antalgic gait. (Tr. 188). Plaintiff was neurologically intact, without focal motor group weakness or dermatomal sensory loss. (Tr. 188). Reflexes were symmetrical and the extremities were normal to examination. (Tr. 188). A L4-5 transforaminal epidural steroid injection was performed. (Tr. 188-89). A motor nerve conduction study was performed and showed mild denervation of the right lower lumbar paraspinals without evidence of denervation in the right lower extremity. (Tr. 193). There was a prolonged sural sensory response that might have indicated an early peripheral neuropathy, but other nerve conduction studies were normal. (Tr.193).

Plaintiff was treated by Dr. Summers on August 23, 2002, at which time Plaintiff reported no change in pain after an epidural steroid pain injection. (Tr. 186). Dr. Summers stated that Plaintiff might have meralgia paraesthetica and discussed available treatment options. (Tr. 186). He said an MRI was not impressive. (Tr. 186).

Dr. Summers treated Plaintiff on September 20, 2002, and noted that Plaintiff reported

"significant improvement" in her leg pain with her nerve block and that physical therapy had helped. (Tr. 185). Plaintiff also reported being able to work in her yard again. (Tr. 185). On examination, Plaintiff had some dyesthesia and hyperesthesia in the right anterior lateral thigh. (Tr. 185). Straight leg raises were negative. (Tr. 185).

Dr. Vohra examined Plaintiff on October 17, 2002, after Plaintiff complained of a three-week pain flare-up after yard work. (Tr. 184). The pain was located in her right anterior lateral thigh and right foot. (Tr. 184). There was also dyesthesia and hyperesthesia in the right lateral femoral cutaneous nerve distribution. (Tr. 184). Straight leg raises were negative. (Tr. 184).

Plaintiff was examined by Dr. Summers on November 12, 2002, at which time Plaintiff complained of significant hyperesthesia to pin prick or light touch over her right lateral femoral cutaneous nerve distribution. (Tr. 182). Plaintiff elected to undergo a nerve block, which was performed without difficulty and with "dramatic and significant improvement within minutes after the injection." (Tr.182). Plaintiff said she was not miserable enough to undergo neurolysis, although that remained an option. (Tr. 182).

Plaintiff consulted with Dr. Vohra on December 12, 2002, at which time he said Plaintiff complained of back pain and right leg pain. (Tr. 181). Plaintiff stated she had applied for disability, which Dr. Vohra thought was reasonable. (Tr. 181). At that time Plaintiff had no new complaints. (Tr. 181). Physical examination that day showed Plaintiff to have a good affect, but mild anxiety. (Tr. 181). There were "no significant depressive symptoms." (Tr. 181).

The Fifth Circuit allows an ALJ to reject or discount the weight of a treating physician's opinion only when "good cause" is shown. *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); *Greenspan v. Shalala*, 38 F.3d

7

232, 237 (5th Cir. 1994); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). Good cause may exist when physician statements are conclusory and brief; when statements are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; otherwise unsupported by the evidence; or when the treating physician is not credible because (s)he is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *see also Myers*, 238 F.3d at 621 (citing *Greenspan*, 38 F.3d at 237); *Newton*, 209 F.3d at 456. When an adjudicator does not assign controlling weight to the opinion of the treating physician, regulations require articulation of reasons therefor. 20 C.F.R. § 404.1527(d)(2) (2002); *see also Myers*, 238 F.3d at 621.

In this case, the ALJ found that Dr. Vorha's opinion of total disability was contrary to MRI findings of only minimal nerve impingement and Plaintiff's own reports of improvement and relief resulting from pain management treatments. (Tr. 22). As such, the ALJ's decision not to assign controlling weight to the opinion of Dr. Vorha is supported by substantial evidence.

*Plaintiff's Other Points of Error*

Plaintiff argues she "is unable to perform a full range of sedentary work" because she has severe limitations in her ability to sit and stand due to her back and leg impairments. (Pl.'s B. 3-4). She also contends the ALJ erred in his evaluation of her RFC because he did not consider the effects of her medications and her depression on her ability to perform work activities. (Pl.'s B. 8-9). Notwithstanding Plaintiff's failure to address the ALJ's actual RFC finding, the Court agrees that the ALJ committed other errors that cannot be overlooked.

The ALJ found that Plaintiff retained the maximum RFC to perform light exertional work activities that did not individually require climbing ramps/stairs, stooping, kneeling, or crouching

for greater than two and a half hours in an eight hour workday. (Tr. 22). Additionally, the ALJ found Plaintiff could never be expected to climb ladders, ropes, or scaffolding. (Tr. 22). Ultimately, relying on the testimony of a vocational expert, the ALJ determined that Plaintiff retained the ability to perform her past work. (Tr. 22).

When making an RFC determination, the Commissioner decides whether an applicant retains physical and mental abilities necessary to perform activities generally required by competitive, remunerative work. *See* 20 C.F.R. § 404.1545(a) (2006); Soc. Sec. R. 96-8p (1996), 1996 WL 374184. The RFC assessment is a function-by-function assessment based on all the relevant evidence of an individual's ability to do work-related activities. *Id.* RFC involves both exertional and nonexertional factors. *Id.* Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing and pulling. *See* 20 C.F.R. § 404.1545(b) (2006). Adjudicators should perform a function-by-function assessment before expressing RFC in terms of exertional levels of work. Soc. Sec. R. 96-8p, at * 5.

The ALJ in this case failed to include a function-by-function assessment of Plaintiff's physical abilities. Indeed, there is no medical assessment of RFC in the record. Accordingly, the case should be remanded for further consideration of Plaintiff's RFC during the relevant period.

Plaintiff also argues that the ALJ failed to consider the side effects of her medications. (Pl.'s B. 5, 8). The Regulations require an ALJ to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] takes or has taken to alleviate [ ] pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv).

In this case, the medical evidence establishes that Plaintiff took narcotic pain medications for her back impairment. (Tr. 181-204). Plaintiff testified that these medications made her

dizzy, drowsy and sleepy. (Tr. 308, 317). And, the ALJ made a specific finding that Plaintiff's back impairment was "reasonably likely to produce the symptoms and limitations of the nature alleged." (Tr. 21). As such, it is inconceivable that Plaintiff's pain had absolutely no effect on her RFC. *See Lawler v. Heckler*, 761 F.2d 195, 198 n. 3 (5th Cir. 1985) (noting that pain, even if not disabling, may constitute a nonexertional factor that limits the range of jobs an applicant can perform). Moreover, the ALJ included absolutely no discussion in his decision regarding the side effects of Plaintiff's medications and what, if any, impact they had on her RFC. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980) (ALJ must determine whether effect of treatment precludes claimant from engaging in gainful activity). Because the ALJ in this case failed to give any consideration to Plaintiff's nonexertional factors in reaching his conclusion regarding RFC, the Court is of the opinion that the case should be reversed and remanded.

Lastly, the medical evidence establishes that Plaintiff was prescribed Topamax for migrane headaches (Tr. 213-14) and Celexa and Effexor XR for depression (Tr. 196-201). Additionally, Plaintiff suffered from 20% hearing loss in the left ear. (Tr. 21). At step two of the sequential evaluation process, the ALJ determined these impairments were not severe. (Tr. 21). Though not argued by Plaintiff, the Commissioner points out that it is unclear whether the ALJ applied the correct legal standard in evaluating these impairments. (Def.'s B. 6 n. 3.) Indeed, as regards Plaintiff's migrane headaches, emergency room records from the date of Plaintiff's burn accident indicate she reported having had a migrane when she "blacked out" for an undetermined period of time. (Tr. 263-64).

An impairment is considered not severe in the Fifth Circuit when it is a "slight

abnormality" which has only a minimal effect upon one's ability to work. *See Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985); *see also* Social Security Ruling 85-28. The Fifth Circuit stated that when an ALJ uses a different standard, remand is appropriate. *See Stone, id.*; *see also Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000). Because the ALJ failed to state the correct standard in evaluating the foregoing impairments, remand is appropriate in this case.

## Conclusion

Based on the foregoing, it is the opinion of the Court that this case should be remanded for further consideration. On remand, the ALJ shall reassess the level of severity of Plaintiff's headaches, menopause, depression and 20% hearing loss for the left ear, using the correct legal standard as herein stated. The ALJ shall also make a specific function-by-function RFC finding for Plaintiff during the relevant time period. The ALJ must determine what effect all exertional and non-exertional factors, including pain and side effects of medications, had on Plaintiff's RFC. Further, the ALJ shall obtain supplemental evidence from a vocational expert to clarify the effect of all assessed limitations on Plaintiff's ability to perform her past relevant work or any alternate work. The ALJ shall not neglect to identify the demands of Plaintiff's past relevant work both as she performed it and as it is generally performed in the national economy.

**THIS**, the 26th day of September, 2007.

                                        **/s/ Michael P. Mills**
                                        **CHIEF JUDGE**
                                        **UNITED STATES DISTRICT COURT**
                                        **NORTHERN DISTRICT OF MISSISSIPPI**